## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANGELINA P. o/b/o ANGEL M.,
    *Plaintiff,*

    v.                                              No. 3:20cv278(MPS)

KILOLO KIJAKAZI, Acting Commissioner of the
Social Security Administration,[1]
    *Defendant.*

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff filed this action on behalf of her minor child, Angel M., pursuant to 42 U.S.C. § 405(g) following a decision by the Commissioner denying Angel's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").[2] Plaintiff argues that the Administrative Law Judge ("ALJ') erred in finding that Angel's impairment of Oppositional Defiant Disorder ("ODD") did not meet, medically equal, or functionally equal a listed impairment. For the reasons set forth below, I conclude that the ALJ's decision was supported by substantial evidence. I therefore AFFIRM.

I assume familiarity with Angel's medical history, as summarized in the Plaintiff's statement of facts, ECF No. 17-2, which the Commissioner incorporates and supplements, ECF No. 18-2, and which I adopt and incorporate by reference. I also assume familiarity with the ALJ's

---

[1] This action was commenced against Andrew M. Saul as the Commissioner of Social Security. ECF No. 1. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

[2] Although the complaint identifies the child as the plaintiff, the *in forma pauperis* application lists the mother's assets and her presence as the formal plaintiff is necessary because he is a minor. *See* Fed. R. Civ. P. 17(c). The court therefore *sua sponte* substitutes the child's mother as a representative plaintiff as set forth in the caption above.

opinion and the record.[3]  I cite only those portions of the record and the legal standards necessary to explain this ruling.

## I.    STANDARD OF REVIEW

The SSA provides for benefits to children (individuals under the age of 18) with a disability, *i.e.* a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child is disabled under the SSA, an ALJ must employ a three-step process promulgated by the Commissioner.  The ALJ must first inquire into whether the child is working and, if so, whether such work constitutes a "substantial gainful activity." 20 C.F.R. § 416.924(b). If the child is not engaged in a substantial gainful activity, the ALJ must then determine whether the child has a "medically determinable impairment[ ] that is severe" within the meaning of the regulations.  20 C.F.R. § 416.924(c).  If the child has a severe impairment or combination of impairments, the ALJ must then analyze whether the impairments "meet, medically equal, or functionally equal the listings."  20 C.F.R. § 416.924(d).

In analyzing whether a child's impairment functionally equals a listing, an ALJ must inquire into whether the impairment constitutes a "marked limitation" in two out of six domains of functioning or an "extreme limitation" in one domain.  20 C.F.R. § 416.926a(a).  The domains of functioning are: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1).

---

[3] Citations to the administrative record, ECF No. 15, appear as "R."  Pagination is to the CM/ECF system's assignment of page numbers.

An impairment constitutes a "marked" limitation in a domain when it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An impairment is an "extreme" limitation in a domain if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). To determine whether a child's impairment meets one of these benchmarks, an ALJ must compare the child's performance in one of the six domains listed above to "other children [of the child's age] who do not have impairments." 20 C.F.R. § 416.926a(b).

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla" and "means and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks omitted). The substantial evidence standard is "a very deferential standard of review - even more so than the 'clearly erroneous' standard," and "means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

## II.   DISCUSSION

### A.   Listed Impairment

Plaintiff first argues that the ALJ erred by concluding that Angel's impairment of ODD did

3

not meet or medically equal any of the Listings without explaining "which Listings he considered or what elements of the Listings are not satisfied."  ECF No. 17-1 at 7.  Specifically, Plaintiff claims that Angel's ODD meets Listing 112.08, Personality and Impulse-Control Disorders.  ECF No. 17-1 at 8.

The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926)."  R. at 18.

"Although … an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent [the court] from upholding them so long as [the court is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."  *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (internal quotation marks and citation omitted).  *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam) ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."); *Bradley A. v. Commissioner of Social Security*, No. 20CV352, 2021 WL 3022288, at *3 (W.D.N.Y. July 16, 2021) ("[A]n ALJ's finding that an impairment does not meet or medically equal a listing - even if insufficiently explained - will nevertheless be upheld if it is supported by other parts of his decision and the underlying record.")  Here, other portions of the ALJ's decision identify substantial evidence that Angel's impairment did not meet the functional criteria in Paragraph B required for Listing 112.08, supporting his finding that Angel M. did not meet the listing.  Accordingly, because this is not a case "in which

[the court] would be unable to fathom the ALJ's rationale in relation to evidence in the record," the court need not remand for clarification.  *Berry*, 675 F.2d at 469.

### 1.     Listing 112.08

Disorders under Listing 112.08 "are characterized by enduring, inflexible, maladaptive, and pervasive patterns of behavior."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(B)(7)(a). "Symptoms and signs may include, but are not limited to, patterns of distrust, suspiciousness, and odd beliefs; social detachment, discomfort, or avoidance; hypersensitivity to negative evaluation; an excessive need to be taken care of; difficulty making independent decisions; a preoccupation with orderliness, perfectionism, and control; and inappropriate, intense, impulsive anger and behavioral expression grossly out of proportion to any external provocation or psychosocial stressors."  *Id*.  To be disabled under Listing 112.08, a claimant must satisfy the criteria of both Paragraphs A[4] and B.  *Id.* § 112.08.  To satisfy Paragraph B, a claimant must have an extreme limitation of one, or marked limitation[5] of two, of the following areas of mental functioning:

---

[4] Paragraph A provides:
    A. Medical documentation of a pervasive pattern of one or more of the following:
    1. Distrust and suspiciousness of others;
    2. Detachment from social relationships;
    3. Disregard for and violation of the rights of others;
    4. Instability of interpersonal relationships;
    5. Excessive emotionality and attention seeking;
    6. Feelings of inadequacy;
    7. Excessive need to be taken care of;
    8. Preoccupation with perfectionism and orderliness; or
    9. Recurrent, impulsive, aggressive behavioral outbursts.
[5] An extreme limitation is a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and is given only to "the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). A marked limitation is a limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities" and is "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i).

(1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace and (4) adapting and managing oneself.

The ALJ found that Angel has marked limitations in interacting and relating with others. R. at 25. Plaintiff argues that the ALJ should also have found that Angel is markedly impaired in the ability to concentrate, persist or maintain pace and the ability to adapt and manage himself. ECF No. 17-1 at 8.

The pertinent regulation provides:

> 3. Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on activities and stay on task age-appropriately. Examples include: Initiating and performing an activity that you understand and know how to do; engaging in an activity at home or in school at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while engaged in an activity or task; changing activities without being disruptive; engaging in an activity or task close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at school; and engaging in activities at home, school, or in the community without needing an unusual amount of rest. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

> 4. Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listings 112.00E.

In his discussion of the functional equivalence domains, the ALJ cited substantial record evidence as to Angel's ability in these areas. He noted that evaluations from Angel's teachers and

school showed that while he struggled with attention, emotional regulation, and distractibility, he could be redirected and engage in an activity.  He was in a regular class although he received additional educational support in literacy through special education.  R. at 897, 903.  The ALJ noted that Angel's special education teacher, Mrs. Gazda, stated that "[c]lassroom difficulties arise when Angel decides he doesn't want to participate in activities."  *Id.* at 20, 883.  In one example, she observed while he was engaged in an activity, he suddenly "decided[d] he [didn't] want to do the activity any longer. . . . He was fully capable of completing the activity but for some reason decided he was done."  *Id.* at 885.  Another teacher stated that Angel calls out to get the teacher's attention instead of raising his hand and waiting to be called on.  *Id.* at 903.  She observed that "[h]e picks and chooses what lesson/activity he will participate in and when/for how long he will participate in it; he feels that he can choose whether or not he has to comply."  *Id.*  When a social worker discussed his behavior and impulse control with his mother, his mother indicated that there was nothing wrong with Angel's behavior, that he did not need any medication for any attention issues, and declined the social worker's offer to collaborate with the school.  *Id.* at 925.  At the hearing before the ALJ, she testified that Angel had transferred schools and was doing "okay."  *Id.* at 42.  His mother further testified that Angel cleans his room, picks up his clothes, and takes out the trash.  *Id.* at 50.  The ALJ noted evidence that Angel was more compliant with his father.  *Id.* at 20, 697, 871.

Other record evidence supports the ALJ's determination.  A neuropsychological examination indicated that Angel's mood during testing was pleasant and that he focused on the assessment tasks although "[h]is attention allocation varied."  *Id.* at 698.  He "was more attentive during the morning hours, and demonstrated more difficulty sustaining concentration" in the late morning and afternoon.  *Id.*  Although Angel displayed "[o]ccasional oppositional behavior," he

responded to limit setting and reminders that his behavior would be communicated to his mother. *Id.* Dr. Balsamo observed that Angel "persevered when he encountered challenge." *Id.* She opined that "[h]e put forth good effort" with the result that she asserted that the tests results were a reliable estimate of his current functioning. *Id.* She concluded that Angel M. had a "[m]ildly impaired ability" to sustain attention on an auditory task. *Id.* at 701. Dr. Balsamo found that in the context of Angel's medical history, family history, and neuropsychological evaluation, his clinical profile was "notable for Attention-Deficit/Hyperactivity Disorder, Combined presentation and Specific Learning Disorder with impairment in reading." *Id.* at 704.

A subsequent evaluation by a Speech-Language Pathologist indicated that Angel's participation in classroom activities was "variable." *Id.* at 860. "On some occasions he shows interest and engagement in lessons and volunteers information, answers questions and listens to teacher direction. On other occasions, he engages in avoidance and off task behaviors and disrupts classroom instruction." *Id.* He was a "willing and cooperative participant" during assessment tasks. *Id.* "He benefited from encouragement and praise when working on tasks and responded well to being given short breaks (5 minutes) after completing several subtests. For each assessment session, Angel required reminders for work expectation and rules for earning break time  In this context, he was reliably able to work for an hour or more." *Id.* The report concluded that Angel presented with "some challenges in his language skills." *Id.* at 864. The report stated that Angel "may have difficulty following instructions, processing information, expressing himself at appropriate opportunities, retelling stories and answering questions with clear and concise information. This in turn would impact his ability to complete activities in a timely manner and participate appropriately in a wide variety of tasks and situations." *Id.*

An evaluation by the Board of Education Department of Psychological Services noted "[c]oncerning behavior" including "cooperation refusal, eloping, verbal and physical aggression towards peers and staff, boundary violation, property destruction, assertion of physical ailments, and deceptive accusations." *Id*. at 871. The report stated that Angel "avoids a significant amount of classwork through disruptive, attention-seeking behavior, or by leaving the classroom without permission or by asserting physical discomfort." *Id*. His mother, however, conveyed that behavior observed in the academic setting was not consistent with his behavior in the home environment. *Id*. *See also id*. at 701 (Angel's mother stated that she "observes Angel to demonstrate broadly typical ability to sustain attention, inhibit impulses, and modulate motor activity.") During the evaluation, he was "[o]bserved attending and cooperating with the teacher's instructions." *Id*. at 872. He expressed frustration and was uncooperative during certain aspects of testing but not others. *Id*. at 877 (noting he demonstrated cooperation during testing concerning "Concept Formation").

In short, the record is mixed – with some evidence showing, at times, serious problems in the areas of concentration and adapting and other evidence showing, at other times, only mild problems in these areas. It is up to the ALJ to weigh this conflicting evidence, and the record supports a finding that he has done so. I conclude that substantial evidence supports the ALJ's determination that Angel's impairment did not equal Listing 112.08. Accordingly, the ALJ's failure to address the listing was harmless error and does not warrant a remand of the case. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.")

B.      **Functional Equivalence to a Listed Impairment**

The Plaintiff next argues that the ALJ erred in not finding that Angel's impairment functionally equaled a listed impairment.  ECF No. 17-1 at 11.  Specifically, she contends that Angel suffers from a marked limitation in the domains of functioning of attending and completing tasks and acquiring and using information.[6]

1.      **Attending and Completing Tasks**

The attending and completing tasks domain assesses how well a child focuses on tasks and maintains attention.  20 C.F.R. § 416.926a(h).  The regulation states:

> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  In support of her argument that Angel has a marked limitation, the Plaintiff points to a questionnaire completed by his teacher, Ms. Esposito, indicating that Angel has a "very serious " problem changing from one activity to another without being distracted and completing class and homework assignments.  R. at 208.[7]

Although the record indicates that Angel's impairment caused him some difficulty in this domain, the same evidence set forth above in the listing discussion undergirds the ALJ's finding

---

[6] As noted earlier, the ALJ found that Angel had a marked limitation in the domain of interacting and relating to others.  R. at 25.
[7] Ms. Esposito also found that Angel had "no problem" sustaining attention during play/sports activities and only a "slight problem" organizing his things and school materials.  R. at 208.

that Angel's impairment caused a less than marked limitation. *See, e.g.*, R. at 885 (teacher observed Angel was engaged in an activity and fully capable of completing it but simply stopped working on it); *id.* at 608 (noting that Angel was able to focus on assessment tasks during testing, although his concentration varied over the course of the day); *id.* at 860 (noting that Angel demonstrated engagement although at other times, demonstrated disruptive behavior); *id.* at 871 (mother reported that disruptive behavior at school was not consistent with his behavior at home). The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but whether substantial evidence supports the ALJ's decision. Here, the ALJ provided more than a mere scintilla of record support for his finding that Angel was less than markedly limited in his ability to sustain concentration and focus.

2.  **Acquiring and Using Information**

The acquiring and using information domain considers how well a child acquires or learns information, and how well a child uses the information he has learned. 20 C.F.R. § 416.926a(g). The regulation provides in pertinent part:

> School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). Substantial evidence supports the ALJ's determination that Angel had a less than marked limitation in this domain. The ALJ noted that Angel was in a regular classroom although he was receiving reading support. R. at 22, 697. He met grade-level

expectations in math and writing.  *Id.*  His favorite class was math.  *Id.* at 42.  Although Angel scored in the low range of functioning in many of the testing areas measured on the Woodcock Johnson IV Tests of Cognitive Abilities, the test results indicated that he was uncooperative during certain aspects of the testing and that his behavior could have influenced the results.  *Id.* at 875, 877.  According to his Special Education Teacher Report, Angel, who at the time was in second grade, read on a first grade level. *Id.* at 881.  She observed that "[r]eading engagement, oral reading fluency, and comprehension were all at an independent level." *Id.*  As to spelling, he was assessed at a beginning first grade level but had grasped some short vowel word families and was "retaining the information and creating his own short vowel words when asked." *Id.* at 883. Substantial evidence supports the ALJ's finding that Angel's limitations in this domain were "less than marked."  Although the Plaintiff argues the ALJ should have found a greater limitation in the domain of acquiring and using information because Angel's behavior interferes with his ability to learn, it is not enough for the Plaintiff to show that the record could support her position; rather, she must show that no reasonable factfinder could have reached the ALJ's conclusions on this record.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  She has not met that burden.[8]

## III.   Conclusion

For these reasons, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) is DENIED and the Commissioner's Motion to Affirm the Decision (ECF No. 18) is

---

[8] The Plaintiff makes a cursory argument that remand is warranted because the ALJ incorrectly stated that Angel was a preschooler when he filed his application. R. at 17. However, the decision reflects that the ALJ utilized the regulations applicable to school aged children and referred to the fact that Angel was in second grade. R. at 20, 25. *See, e.g.*, R. at 23 (noting that a school-age child should be able to "sustain attention well enough to participate in group sports, read by himself and complete family chores.")

GRANTED.  The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: August 30, 2021
        Hartford, Connecticut

_____/s/_____
Michael P. Shea, U.S.D.J.